The dialogue between public officials and their constituents is fundamental to our democracy. Much of that conversation now takes place online, with social media platforms serving as the new town square, where public officials provide important information about what they're doing on the public's behalf and soliciting input from the public. While public officials retain First Amendment rights, use of a private social media account does not immunize an official's conduct from First Amendment or constitutional scrutiny. Under our test for state action, a public official who creates a channel for communicating with constituents about in-office conduct and then blocks a user from that channel must abide by the Constitution. This test, which focuses on how the public official is using and purporting to use that account, is consistent with this Court's precedent, under which a public official who purports to act in that capacity is a state actor. It also accords with Section 1983 and the original understanding of what it means to act under color of law. The Sixth Circuit's duty and authority test, by contrast, would provide ready means for public officials to evade the Constitution. Here, for instance, it would mean that the city manager would be free to block from his Facebook page any constituent who is a member of a disfavored race, religion, or political group, free from constitutional constraint. Our test avoids that result while still leaving ample room for public officials to communicate in their personal capacities. I welcome the Court's questions. Would you also win under the doing their jobs test? Mr. Carlin made the point that there are only three instances on the website there, in the last case, that were personal. In this case, just going through the joint appendix, there's quite a bit that is personal. So how would you just factually distinguish that or emphasize the fact that the personal here does not override the official? So there were certainly a lot more personal posts, although the ratio of job-related posts to personal posts changed dramatically at the start of the pandemic, as you would expect, because a lot of the services and the way that he was doing his job migrated online. I think once you've established a channel for communicating with constituents about your job, I don't think also posting sometimes about your family is going to undo that. Although, if what you're complaining about in a specific case is having a comment on a personal post deleted, obviously that would change the equation. Does it matter if you've established this channel ahead of time and before you became a public official? You sort of suggested that it had to do with the purpose of the account. So I think you would look at what you were doing with the page beforehand, or you could, I suppose. But I think it's fairly clear that Mr. Freed wasn't talking about the job of the city manager before he actually became city manager. He wasn't posting about directives that he himself issued until he had that power. Does it matter whether or not he opens up a new page once he becomes the city manager and begins conversing in the way that we're talking about? Or, alternatively, he had this page before he became city manager. It had all of his personal information and pictures of his kids and whatnot, and he just added to the stream of conversation. So I think that's something that you would look at. Obviously it would be a factor, but there were a lot of things that changed when he became city manager. Not just the content of the post, but presumably he also didn't list as his website on the page this official city address. He didn't use the community comments at porthuron.org as his email address. There were a number of things that changed by virtue of the fact that he was starting to use this in his capacity as the city manager of the town. Would it have mattered to you if he had a disclaimer on it? So I think it probably wouldn't get you back over the line into personal use, in part because of the way that he was using it to make certain announcements and issue directives, information that you wouldn't necessarily be able to get anywhere else. And certainly there was no other place that you could go to interact with the city manager. Now, it would have, I think, been something that they could argue that he was using this in a personal capacity, but I think the disclaimer would have been substantially overridden by the way he was actually using the page. Just to be clear, if the page had not been created until he became city manager, would the case come out the same way? Should it come out the same way in your view? It would, although perhaps it would be even clearer than it already is. It would be, okay. What if 95% of the posts are personal and 5% of the posts involve discussion of his work? So it would obviously be a more difficult argument for us to make, but I would still be here certainly as my client's attorney telling you, look, if there's only one place to go to interact with the city manager about directives that he himself had issued, the fact that he posts a lot about cats or whatever personal thing he wants to post about, that doesn't change the fact that if you get blocked off from that page, you're suddenly losing access to a lot of information. So if it's entirely personal, but once he slips and he talks about his work, that changes it? I think it does because it's not really being established as a channel of communication. It's a little bit like running into someone at the grocery store where maybe they let slip some information about the way the government is working. That doesn't mean that they are going to the grocery store in order to interact with constituents, but you could obviously change the hypothetical where they say, I'm going to hold office hours every Friday in the grocery store for an hour to talk with citizens about pending legislation and what I'm intending to do. So I'm not sure about the line that you're drawing. You said if it's 5% official, 5% work-related, then it's state action, but if it's like 1%, when half of 1% it's not, is that what you're saying? So it's not a quantitative test. It's qualitative. But the quality that you're going for is whether you've established it as a channel of communication. And I thought I understood your hypothetical as essentially just one thing you said one time. There's no understanding or expectation that you're using this as an ongoing channel of communicating with constituents. I'm confused. Is it the channel that we're supposed to be focusing on? This gets back to the Chief Justice's first question in the last argument. Or is it the message at issue itself? Because I had thought I heard you say if the message were about a private family matter and you were blocked from that, you wouldn't have any recourse. So which is it? Is it the channel or is it the message? So I think in part it depends on what function you're complaining about. If your complaint is you're being blocked from access to the page, then it's the channel that matters. It's the entire page and your access to information. If, on the other hand, you're complaining because your comment was deleted from a post, it obviously matters what the post was about. If it was a post about cats, then you don't have any constitutional claim. What if the individual harasses the public official on all of his personal cat pictures and children pictures and he finally gets fed up and he just blocks him from the channel? Sure. Then that's state action. So I think it could be in the exact same way that it could be if, for instance, you were on an official page of the town and you were being harassing. But all the harassing in my hypothetical has to do with cats. The commenter hates cats. And maybe he hates your children, too. I don't know. But if I block a person for that, at some point, even though it's all my personal stuff, that's state action. So I think, again, let's say in official town pages, all the time they say, here's someone enjoying themselves in the park. And let's say you posted something. I don't want to change the hypothetical. I get it. I get it. But just ask your mind. So the answer is there still would be state action, but it would probably easily pass the First Amendment. And especially with a qualified immunity overlay, it would be a very easy case. There's litigation. I don't want to interrupt. No, please. Please interrupt. Once it's state action, then there's an issue. And I guess one of the concerns I have about your position and just the line drawing is to define doing your job as talking about your job is really quite all-encompassing, really, because a lot of elected officials I've been around love going to the grocery store and talking to people after church, and that's where they learn things to help them do their job better. And they're thinking in their mind, yeah, I'm going to church, I'm going to the grocery, but I'm also going to pick up things. We're going to the game. We're going to the high school football game on Friday night, and I'm going to see a lot of people, and that's going to help me get my finger on the pulse of a community about whatever issue it might be. And I understand that, but I think that's what the distinction between talking about your job, which you might do at the grocery store, and establishing a communication with constituents about your in-office conduct, which is something that happens on an ongoing basis. So the two key words I think you used there were establishing and channel, and I don't know what it takes to, in the brick-and-mortar world, to establish a channel, but if you have a regular pattern of seeing a group of people. I want to meet at my house with old friends regularly to talk about what they think is going on. In the community for purposes of helping me figure out what legislation to propose, as a state rep, say. I think there, if you were just issuing an invitation to your friends, that's very different than issuing a general invitation to everyone in the town, all your constituents, who you basically say, I will interact with anyone who comes, but according to my friends from the other side, you could essentially say, but only the white citizens of the town are invited. But it goes back to who you want to include and who you want to exclude, I guess, and I think elected officials and appointed officials rely on groups of people who are supporters, friends, people they've known, people who are fair-minded, not people who are just going to come and scream at them to get advice, thoughts, including negative and critical thoughts, but they want to exclude the person who's the jerk who's going to interrupt the whole thing. So I think it's easy sort of on the extremes, where either you're just inviting an old friend, or you're inviting everyone in the town because they're constituents, which is essentially what Freed was doing. In the middle, I grant you, there will be difficult cases where it sort of seems like you are inviting everyone only that you like, or there may be other ways to divide the hypothetical, but I think in a case like Facebook, where essentially anyone with a profile could look at Mr. Freed's page, I think it's relatively clear the invitation was to everyone in the town. Can I direct your attention to what I perceive to be a difference between your position and the one that Ms. Carlin just articulated? And maybe there is no daylight, but I would be helpful to understand if there is. You've said repeatedly here that this is about whether or not the page has been established as a channel of communication, which sounds to me like a species of the appearance. We are looking at this page, and we're seeing how it operates. I understood Ms. Carlin to be saying, well, really her test is, are you doing your job? What are the duties and functions of your position? And have you created this page, and does it operate to facilitate your job duties? Is there a difference between those two, and are you also relying at all on the duties or functions, whether or not the person had to create the page or something like this? I think if they had to create the page, that obviously is game over. But we agree with the respondents in the prior case that there has to be a broader conception of what duty encompasses to mean everything that is customarily expected of you in your job. For a high-ranking executive official, usually that's going to be talking about your job, at least in a certain established way. But I didn't hear your test to be about duty at all, really. Is it? I think the answer is, it is certainly sufficient if you have a concept of doing your job through your page. We think that we have that here. We also have a slightly broader principle that if you hold yourself out as doing your job through your page, that is also sufficient, which I don't know that my friends on the other side, a respondent in the first case disagrees with, but they aren't relying as much on that principle. And your hold yourself out in this situation is because we can look at the page and we see that it has been established as a channel for communication with its constituents. So that's partly the way that you design your page and partly what you do with it. Here we have both his profile and the way that he was posting and what he was posting about. I would have thought that what it looks like is the worst test for you, because what this looks like is there are a lot of baby pictures and dog pictures and obviously personal stuff. And intermixed with that, there is, as you say, communication with constituents about important matters. But it's hard to look at this page as a whole, unlike the one in the last case, and not think that surely this could not be the official communication channel. Yeah, so I think... It's not like any town I've ever seen. Right. Well, I think small-town government works in different ways. Obviously, there was some personal stuff as well, but the way that he was talking about the posts, referring to things in the plural, the way that he was posting things that were directives that he himself had issued only minutes earlier, and then answering constituent questions about that. Now, admittedly, he was also talking about personal things, but you can't essentially immunize yourself from constitutional scrutiny if you've established this government channel of communication just by also posting about your dog. Well, what do you say to the Chief Justice's concern at the outset of this conversation about the free speech rights of civil servants? And we're numbering the millions now across this country. And if it is within the scope of your duty, and if you're going to define that very, very broadly, you give the government a lot of power over limiting what many millions of Americans can say. And surely that must be some concern to you. It is a concern that has to be balanced against the right of people in the town. I think there is some irony that the petitioners in the first case in the United States say the way to solve the First Amendment problem is for the government just to tell people how to use their pages. Well, and there's some irony on the other side to say the way to solve the First Amendment problem is to turn it all into government speech. So the government controls what millions of civil servants in towns large, small, and the federal government alike, what they can and cannot say in the public forum. So admittedly, there's going to be some issue of government control, but I don't think that's escapable. For instance, if the mayor of Port Huron had wanted to, she obviously could have told Mr. Freed, either stop posting your directives to your personal page or when you post them, also post this additional information. Or when you answer a question about this directive, answer it in this way. So that sort of control is already going to be there regardless of whether he's considered a... It would be on a clearly public page. The question... Clearly. The question is whether it might also have to be on a page maintained that somebody thought personally that they came up with before they became a government official that's mostly populated by dog pictures, and whether the government can also mandate what the person can say there. And if that's the case, what's left of that person's free speech rights? I mean, we used to care about public employee private speech rights, Garcetti, Pickering, you know. And I think, as your question alludes to, there is a doctrine under the First Amendment that reconciles the First Amendment rights of a public official against the government's interest in the speech. One of the key points that we're making is the exact same factors that you look to to decide whether the government has an interest in the speech and therefore has some control over it, even when it's ostensibly private speech, those are things like, are you purporting to do your job on the page? Are you holding yourself out as a public official? And if so, can the government tell you, if you're going to use your title on your page, as many people do, just make clear you're saying this in your private capacity. And if the government can say that to you, consistent with the First Amendment, then you sort of understand that there's not going to be a different First Amendment equation just because we're calling it state action as well. Well, I mean, on these pages, people have both a job in the government and they have all sorts of other things, whether it's cats or children or whatever it is. And the problem, it seems to me, is we kind of have to disaggregate that, right? And say, well, you know, you have to have a governmental page and you have to have a private page and you can't mention the government on your private page or else it's going to become a government page. And as I understand it, you basically say if you've got 5% government, then we, the government, can basically say the whole thing, even if the rest of it is all about your children and the dogs. That's ours. And if we don't like little dogs, we can say you can't put pictures of little dogs on there. And it seems to me that that effort to kind of disentangle the two things doesn't really reflect the reality of how social media works. So, Your Honor, I have to push back in two respects. First... About the dogs or...? A little bit about the dogs. So one principle is it's not the 5% versus 95%. It's not that you've gotten over some threshold. It's the way you're using your page as an ongoing place where people in the town go to get information about what you as a city manager are doing, how you're doing your job, the directives that you issue. If you set it up that way, that's the quality that you're looking for. I don't mean to interrupt, but what if you're doing... You know that from your, you know, the official weather, whatever, a very bad storm is coming. You also know that not everybody checks the city site, you know, 12 times a day. But you know a lot of people look at your private site. And if you put on there, there's a very bad storm coming, or I looked at the city weather, whatever, you need to know there's a bad storm coming. Does that compromise the private nature of your page? No. Again, you haven't set up an ongoing channel for communication where people know that's the place to go in the future for important information. How do you know that this is an ongoing channel of communication? What do you look to to decide that? And be specific about this site. What on this site indicates that this was what you consider an ongoing channel of communication, as opposed to just a place where you talk about your dogs, you talk about your children, and you talk about your work? Sure. So I think as soon as the pandemic started, there were multiple posts a day about what he and other people in the government were doing. Usually he was going to post a daily COVID update from the basically health equivalent of the CDC. He was posting directives, so I could direct you, for instance, to the directive on page 22 of the Joint Appendix. There's another directive on page 20 of the Joint Appendix. And then the specific post that was the subject of the dispute with my client, that was flanked by a post about a community operations outreach center on one side and a place to donate for people who were struggling on the other side. So there were just multiple posts a day about this. And he was also interacting with constituents. So one of the key features I think that you would lose out on is if you go back to page 22 of the Joint Appendix, he issues this order about cutting off water. And he says, basically, effective immediately, we're not going to cut off water for 30 days because of the pandemic. And then there's a question from a constituent below who says, well, what about people whose water is already cut off? Are those going to be turned back on? And he answers, yes. So there is essentially a real-time gloss on his own directive. And it's possible that the directive appeared somewhere else. There's nothing in the record about that. But it presumably came a little bit later. And if you wanted to know what is the city manager, who's essentially the chief executive officer for the town, what is he doing, that's the place to go. There was essentially no other game in town for figuring it out if you were a citizen of Port Huron. Well, that makes it pretty difficult for a public official or city manager to have any kind of private site because he could have a private Facebook page populated with pictures of his dog, pictures of his kids. And one of his friends asks something about the water shut off. And he says, you know, yeah, the water's going to be shut off, you know, et cetera, a storm's coming, whatever. Has he then transformed what he thought was his private Facebook page into something that is state action and so he arguably has to give everybody in the town access to when he might not want to give them, you know, access to pictures of his kids? Or does he have to tell his friend, sorry, I can't answer that question here. Head over to my public Facebook page and I'll answer it there. So that sounds a lot to me like the sort of Facebook equivalent of just running into someone in the grocery store. I don't think that that creates any sort of channel that way. Although the best practice is obviously to refer someone, you know, for more information, go to the official page. It creates nightmares of litigation though, right? So it could create nightmares of litigation. I think literally whatever you say here, unless you essentially say nothing that happens over Facebook is going to ever be state action, which I don't even now take any of the parties to be arguing. Unless you say that, you're always going to have some amount of litigation. The good news is our test has been the majority test in the circuits and I think the reason that you don't see a flood of litigation, there are basically only five court of appeals decisions including the two cases before you, is number one, you've got the qualified immunity overlay. Number two, most of these First Amendment claims are not going to have much to them. They can be dismissed on reasonable time, place and manner restrictions. Why isn't all of Facebook the equivalent of running into someone at the grocery store unless on that personal page you're announcing some governmental rule or some official notice of some kind and we can debate what official notice is? So I think Facebook, as this court has said in other cases, and all of these social media platforms are incredibly powerful in a way that running into someone in the grocery store is not. This is not just an incidental place where you happen to receive speech from someone. In the olden days, if you were a public official and you wanted to communicate with the public outside of formal channels, you probably would have had to walk out of your office, maybe find a pay phone if you remember what those still were and it would have been very difficult without the use of your staff to communicate to the public in any sort of broad way. These social media platforms make that basically instantaneous. You can cast as wide a net as you want, talk to everyone in the town. You can talk specifically to individual people. They are just incredibly powerful in a way that I don't think that just the happenstance of running into someone in the grocery store is. I think the better analogy, if I may tweak yours, is essentially just saying, you know, I'm going to post my private phone number. Everyone in the town can give me a call if you have problems with your leaf collection. Oh, but by the way, only white citizens are allowed to use this phone. I think that would also be constitutionally problematic, even though you were using your own private phone number. Thank you. Justice Thomas? Justice Alito? Justice Sotomayor? Justice Kavanaugh? Justice Barrett? No. Justice Jackson? One final question. I guess I don't understand why this test that you have articulated doesn't require the sort of post-by-post analysis. Because I appreciate that you say that this is an ongoing channel of communication because we have some posts that give the kind of information and ask for public feedback, but you also concede that we have other posts, a substantial number of other posts, that are private. So first, I guess, what is your answer to, could the public official who uses this to communicate with the public sometimes, could they block a person who made comments about the dogs or not? So certainly they could... Is that state action? Excuse me. Is it state action to block a comment about the dogs? So I think the answer is, if you're talking just about removing a comment from a specific post, it is only state action if the post itself has something to do with the job. And I think this goes back to the Chief Justice's questions about whether all of a sudden it means that you basically have to let the government control all the posting that you do about your cats or dogs. The answer is no, because the posting about the cats or dogs is not state action. But if you're talking about blocking someone's access to the entire page for all time on a going-forward basis, then obviously it matters not just the specific post that led you to take that action, but all of the other information that they're losing out on. So you're saying there is a situation. Was that the case in your situation where the block resulted in no access to this page at all? Yes. So two things happened. He had comments removed, but also he was blocked so that he could not access the page when he was signed in. And there were four other people who also either had comments deleted or were blocked, all of whom because it was because they essentially criticized the way that Mr. Freed was performing his job as city manager. Thank you. Thank you, Counsel. Ms. Ferris. Mr. Chief Justice, and may it please the Court, this country's 21 million government employees should have the right to talk publicly about their jobs on personal social media accounts like their private sector counterparts. As this Court addresses the question presented, this Court should adapt the Sixth Circuit's duty and authority or state official test because it complies with this Court's precedent and requires that a government employee is either exercising power possessed by virtue of state law or made possible only because he is clothed with the authority of state law. Petitioner wrongly advocates for an inherently subjective test that divorces the state action inquiry from state law. Petitioner's test will result in uncertainty and self-censorship for this country's government employees despite this Court repeatedly finding that government employees do not lose their rights merely by virtue of public employment. James Freed's Facebook account is the perfect example of the danger of petitioner's test. Mr. Freed opened a personal Facebook account in 2008 as a college student at Indiana Wesleyan University. For 12 years, he built up the account to interact with friends, family members, and colleagues to talk about his passions and interests, including his wife, daughter, his dog, his work, and his favorite Bible passages. As he had done for over a decade while operating the account, in 2020, Mr. Freed made a private choice, like any other Facebook user could do, to block petitioner and delete petitioner's comments from the page. After being sued, Mr. Freed deactivated the page and stopped speaking to his family and friends and the public on Facebook because he did not want to lose control over his own speech by the threat of state action. Such self-censorship for government employees will not only have a negative impact on government employees themselves, but in addition to society as a whole, as the voices that may advance knowledge and the search for the truth will be silenced. I welcome the court's questions. There's quite a bit on the site about personal activities, including the battles with raccoons and other things. But petitioner says that the balance changes somewhat during COVID, during the COVID crisis. Would you react to that and whether or not that sort of episode is enough to convert this into an official activity on this site as opposed to a personal site? Yes, Justice Thomas. So when you look from the joint appendix from 15 to 24, you can see that from the time that COVID started in March of 2020 through the day that the post in which petitioner claims he was then blocked and deleted, Mr. Freed only makes 14 posts. And just to give some context to that, from March 2019 to May of 2020, he made 451 posts. He was very clearly a very active Facebook user. And in those 14 posts... Before you go on, just the COVID activity, would you consider that government speech? No, Your Honor. And he had no duty or authority to be the COVID spokesperson from the county. And when you really look at those 14 posts, all he was doing was resharing information from other sources. And most often, in only two instances, was at the city of Fort Huron. There were other nonprofit entities. There was other government agencies that weren't the city of Fort Huron. He was sharing information just like your neighbor might have done on Facebook, like anyone else during COVID. So nothing changed during that COVID time period. Wasn't he inviting the public to comment on his performance as a public official? Your Honor, no. There was a thought that people could comment, and sometimes people did. And as my friend on the other side noted, that he sometimes would give the answer if he knew it. So you're claiming that this site was, in fact, not a site for... not an open square site where he was sharing business work information on a regular course. He did. Or soliciting comments on a regular course. No, Your Honor. And you can see in the record that oftentimes someone would ask a question related to the city, and Mr. Freed didn't respond. So if he had the duty to answer the town's constituents, which he's an employee... So now use the definition of duty and authority that both the Solicitor General and the other case has done. Tell me how you fit in within that broader definition. I know how you fit in within the Sixth Circuit. They ruled. Address the way they defined it and tell me how this case would come out under their broader rule. Sure, Your Honor. Assuming its duty includes the duty to communicate with constituents that you have either custom or whatever, and authority includes the authority to find the state in some way, or to do this thing. I'll start with the Solicitor General's test because I think that's the easiest. We would very clearly win under that test because this is a personal account. The login is jamesrfreed1 at facebook.com. But they went past that and said it depends on the nature of the message in some... Your Honor, I don't think that the Solicitor General... Well, they said if you use the account for all that personal stuff and used it for notice and comment on a rule, that would be a business account. Correct. So the message there... You have to look both contextually or the channel, and you have to look also at the message. Your Honor, I agree with that. I would say that if Mr. Freed used the Facebook page, they decided to host a city council meeting on Facebook Live during the pandemic, then during that period of time there may be state action in that case. And I think that's where the notice and comment comes in because the city council meeting inherently has a right to access to the public. They're able to come for public comment. But if you looked at it, if they did that in his backyard and he opened up his backyard to the city council meeting, while there may be state action during the city council meeting, I don't think anyone would dispute that. He doesn't have to let everybody... The government... I understood the government's position to be that if they had the city council meeting in their backyard, maybe I'm mistaken, that it's a property thing. It's if they have it on the farm or whatever. Your Honor, my understanding of the Solicitor General's test is that the property is heuristic and that if it's personal in and of itself, then that's pretty much always going to go to the government employee. But I'll let the Solicitor General also answer for herself. Sorry. But that's OK. And I think the biggest problem that we have in this case is that without this type of bright-line rule, we're not going to give government employees... And we're not looking to anything objective. We're looking to petitioners' subjective criteria. There is going to be an influx in litigation, and government employees won't know when or when they cannot... when they can talk about their jobs on social media, which we know from Lane is their right to do. I think you're... I was just going to say, one clear rule would be if it's the only place they can go and you're talking about governmental activities, that's the place to go. That's government speech. In other words, here perhaps the significant characteristic is that there wasn't any other place to go, right? Your Honour, there were other places to go. Mr. Freed very clearly testified, and this is at the Joint Appendix at 638, that anything that was ever released was always released by official channels. So, for example, when he issued the water directive, that would have been sent to the Water Department, and of course when he did that, there's state action there. But what if many people in this town thought that... the site that they wanted to go to was his site? They didn't want to go to the water site and the road site and the COVID site and the health care site and this site and the... I mean, he was the one-stop shopping, and they could see pictures of his dog too, and that was nice. So, this is where they went for their information about what was happening in town. Well, rest in peace to his dog. But, Your Honour, in this case, it doesn't matter that someone wanted to go see his site. There was...he didn't... The city manager position is not a public-facing position. It's not something like a press secretary where they are required to speak to the public. His duties under the state law or the city ordinances are to manage the government employees. And you don't think that managing the government... managing everything that goes on in the town, that it helps to have a channel of communication to your constituents, to the people who live in the town? Your Honour, I think that's obvious in any type of position like that. Any governmental position would want to have some type of communication with the public. But that doesn't mean that every single thing, every single time a government employee talks about their job and they happen to be in public, that it transforms into state action. I think the problem is they define the custom, I think, of positions like this as including communicating with the public about your job, and therefore everything that you communicate about your job becomes state action. So that's a problem for them, as I see it, because that seems very broad to me. But then how would you define it short of that and be very specific? For example, announcing rules, the word directive here, announcing directives, announcing notices about COVID. Where do you draw the line short of the line that I think the other side has? Justice Kavanaugh, I think that your hypotheticals in the last case made the most sense, and that if you have a duty to announce a rule and the only time that you ever do it is on the Facebook page, then there's going to be state action there. If he had an explicit duty to do something and that's the only time he's carrying it out, yes. But if he's merely reposting or resharing the official action that he had already taken, there's no state action in that case. On the resharing thing, I guess this is a helpful question for you, but just to think it through, I guess the point there is any citizen could be resharing. It's not unique to the city manager, I suppose. But I think the response to that, just to continue, as Justice Kagan would say, a lot of people are going to rely, her questions suggest that a lot of people are going to rely on the city manager to be the place you go for that information. Your Honor, a couple of things in response to this, but just the clout of someone's job doesn't transform something into state action. So many more people may attend Mr. Freed's birthday party because he is the city manager, but just that clout of his job alone and the fact that people may be going to his Facebook page because he is the city manager isn't enough to get us into state action. And one thing you said I think I disagree with pretty strongly, which is that it's not part of your duties to communicate as a city manager with the public. I would think as a customary matter, that would always be, maybe you didn't say that, so I'll give you an opportunity to amend that if you want. No, Your Honor, I think in all government positions, I think it's inherent, talking generally and speaking, but the city manager's role I think is unique in that he has no authority to take any, he can't make policy, he can't change policy, he can only recommend what he thinks is best to the city council, and then they have to take an official action as the city body. Oh, sorry, please finish. He has no authority in and of himself to take any action like that. So Justice Sotomayor was asking in the last argument about the Sixth Circuit's test and whether it relied solely on written law and excluded custom, but you've been talking back and forth with Justice Kavanaugh about custom and customary duties, so do you agree that custom can be part of the source of authority or duty? No, not exactly, Your Honor, but I do think that there could be, I think the Sixth Circuit used the phrase apparent duty, so I guess what I would say is if the city council directed Mr. Freed to discuss city business on a social media account. But 1983, I mean, clearly custom can be enough. Correct. Customary policy, so do you really want to fight that that hard? I don't disagree that 1983 statute, ordinance, regulation, customer usage, so we don't have to look just to state law, but I think the only case this Court has ever really addressed with custom was addicts, and it had to be something that was so forceful that it essentially was the law. So when we look at that case, they weren't letting any blacks at the counter to eat, and there was a police officer in there enforcing that custom. So we don't have anything like that in this case where it's something so defined that it becomes essentially a duty. I guess I understand your argument to be with respect to the need for some sort of clarity, bright line. Public officials have a First Amendment right, and they need to know when they're going to be able to exercise it. I appreciate that, but I guess I thought that we had a line of cases like the Pickering and Garcetti cases in which those kinds of issues were taken into account, and the Court did not choose a bright line test. In other words, in the Pickering scenario where the public employees are trying to speak on matters of public concern and the government doesn't want them to speak, I suppose the Court could have adopted some sort of a bright line as to when are you speaking in your public capacity and when are you not, but we said that it's a practical inquiry and that the listing of a given task and the employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the professional duties. So it seems to me like you are arguing for a bright line listing of the duty or some kind of clear way to know in a circumstance in which in other similar situations we've said that's not required. Your Honor, I don't think it's only looking at the specific duty or that bright line, but I think what I mean when I say the term bright line is that there's some type of objective indicia of the duty and authority, and where the Sixth Circuit, I think, was correct in saying that you can look whether government employees are helping the person maintain the page. If government funds are used, if the government page is owned by the government, in Mr. Freed's case, if once he leaves the city manager position, then the next city manager is going to take over that account. So these are all objective indicia. Would you include operation, how it functions? The other side says you also look at what's actually going on on the page. Is that a part of the test for you or not? No, Your Honor, I wouldn't include function in the way that they do. I would look to whether there's duty and authority because that's what this Court's precedent in state action has required, that you're exercising some type of rights and responsibilities made possible only because you have the authority of state law. That seems to me not adequate at all, but every elected official tells me that they're on duty 24 hours a day. And so if they are, during that 24 hours, creating themselves and posting the Facebook and doing all of the communications they're doing, why isn't that state action? If you're using government resources, you're a government resource. You're a government employee, and if you're claiming you're on duty 24 hours, then you are, and you are using a state resource. So it can't be as limited as you say. Your Honor, that would violate the government employee's First Amendment rights because we know from Lane that government employees have the right to speak publicly about their jobs. So the question is on what topics, and the issue becomes, as I think your other side is arguing, are you using this as a channel of communication with the public for you to be able to do your job? That's how they want to define it. Yes, I'd agree with that, Your Honor. That's what they're saying, but I don't know what's wrong with that if your position is that the state stops you from using it as an official tool. Well, then every time a government employee speaks about their job, they have the threat of litigation like this, and they have the threat of this. These Facebook challenges to me are not quite made up, but I don't fully understand them because no one forces a public employee to have a comment box. And so I don't know why your person closed down his Facebook account when he could have just blocked public comment. Your Honor, actually, at the time, Facebook did not have that option. It didn't come into effect until March of 2021. I see. Okay. At the time, he did have to require comments on his page if he wanted to continue speaking to his family and friends on the page. That is different now, and social media will evolve, so there will be different things that happen, but that wasn't an option at the time. If you were advising a different town manager in a different town, someone who's newly elected, this person loves Facebook, wants to communicate with family and friends on Facebook, also wants to communicate with constituents, would you advise that person to mix the two together on the same Facebook page, or would you advise that person to separate them and have a purely job-related official page and a purely personal page? I think until this case is decided, I might have different opinions on what I would advise someone, but I do believe that under the state action inquiry here, a public employee should be able to speak about their job as long as they're not exercising their actual job duties on the page or hosting a city council meeting or things like that. Just speaking and reposting about your job, it should be perfectly fine to do on either page, on one page. Unless the court has any further questions. We'll find out. Justice Thomas? Mr. Lito? Justice Kavanaugh? Justice Gorsuch? Justice Kavanaugh? Justice Jackson? Thank you, Counsel. Thank you, Your Honor. Ms. Hansford? Mr. Chief Justice, and may it please the Court, as the government explained in the first argument, the correct overarching test here is duty or authority, and we think how that test plays out in a case like this one that's about denial of access to property should look closely to the nature of the property. And so we're trying to get at whether this is an exercise of state power, and Justice Barrett, we're happy to view this as evidence of that, but we think that the heuristic or the way the court should look at this set of cases is that state action generally exists in a denial of access to property case where either the government controls the property, such as an official Facebook page, or a defendant is exercising a duty that itself requires providing access, such as conducting a city council meeting on Facebook Live or Justice Jackson in his backyard. That's something that requires providing access, so that would be something that's an exercise of state power. By contrast, the appearance and content test that my friend on the other side advances imperils the freedom of a government official to speak as a public citizen on matters of public concern, and I think the facts here are a perfect example. Mr. Freed posted on Facebook on his own time on a page he had created long before. He didn't use any government devices. He didn't use government resources. And still, because like most people on Facebook, he was talking about the pandemic in March of 2020, and because that overlaps with the subject matter of his job, my friend on the other side says that that became state action, such that constitutional constraints applied, such that he was required to allow comments he disagreed with or people he found creepy, and I think that that has really serious repercussions. I think both just in the Facebook context specifically, I think as the Chief Justice pointed out, that does mean employer control. That means that the city of Port Huron could say here, Mr. Freed, no Bible verses on your page. You have Bible verses on his page. Because this is state action. That means it's our speech, and we don't want biblical verses on our pages. That would be something the government could do if this is state action, and so it falls into the Garcetti bucket instead of the Pickering bucket. And I think it also has major repercussions for the physical world, because if appearance and content can convert something using purely private resources that has no government ownership into state action, that means that when Mr. Freed goes to the hardware store, maybe he's wearing his city manager pin, and he's talking to people, those people have access to the government in that instance because he's knowledgeable about that material, and that suggests that suddenly he might be subject to constitutional constraints, or if he's having people over for a dinner party, either friends or a kitchen cabinet of informal advisors whose views he shares. If he talks too much about his job, if he identifies himself as a city manager or they know that position, that means that he loses the ability to have those conversations in his private capacity, and that's why we think it's so important to look at what the actual duties of the job were that he was exercising, and just this idea that any time you're having a conversation with the public, that becomes state action, I think is a really dangerous idea. And to look specifically at what Mr. Freed's duties were in this case, Justice Kavanaugh, I think different city managers might have different roles, but Mr. Freed's role, which is set out in Section 2013 of the City Code and C5-1 of the Charter, is really not a public-facing role. He reports to the City Council, he issues administrative directives, he manages other officials. I think if you look at that set of duties, it's clear that he is not the person who's in charge of communicating to the public, and I think that's another way that my friend on the other side, a position on these facts is so extreme. In the physical world, practical limitations severely limit the ability of government officials to move what look very much like government events or functions onto private property, and so your property-based rule may make more sense in that world, but it doesn't cost anything to open a Facebook page. And so to make so much turn on who owns the Facebook page seems quite artificial. You know, the mayor of a small town could have everybody, could have what looks like a quasi-public meeting on the farm, but somebody who, an elected public official in a jurisdiction with millions of people, can't do that. So Justice Alito, I agree that if there is a duty to do a certain thing, then the fact that it's happening on private property, whether it's the farm or the Facebook Live or the private Zoom, isn't going to change that. The government official can't take things away. If they're carrying out a duty, that is going to still be state action. But I think we have to be really careful before assuming that something that's happening on private property is state action just because it's talking about the subject matter after some duty to have that conversation. Well, if duty is positive law, then that's a pretty clear, sharp limitation. But if you say, if you agree that custom, that duty can arise from custom, do you agree with that? I agree with that, but in the narrow sense, the atticus sense of custom that has the force of law, that's how this court has defined it in the 1983 context. So when there's such a strong norm in a town, that if you allow your diner to serve racially diverse groups, the facts and atticus, unsegregated groups, the sheriff will come and will beat you up and there will be negative repercussions. I think that is a form of custom. I don't want to be too rigid. I'm sorry. Communicating with constituents is not a strong enough custom for elected public officials. So just Mr. Freed is not an elected official. He's an appointed official, but setting that aside, there are roles in which communicating with the public is part of the job, but that is also something that any public official can do as a private citizen, and we have to tell which, and if it's happening on private property, we should be really careful in assuming that that is the exercise of a public duty because that takes away the public official's ability to ever communicate with the public or in matters of public concern, say things like stay home, stay safe, and that becomes official action even though you could equally say that as a private citizen. I didn't want to interrupt. Sorry. You were about to say I don't want to be rigid on how I define, and then you didn't finish that. I just want to make sure I caught that. I think it was custom. I think on how I define custom, so I think that duty has some flexibility to it. Here you would look at those provisions that I cited earlier in the city code and the city charter. It also provides... But the broader... Keep going. ...that Mr. Freed's duties include things that the city council instructs him to do. Maybe that's in a memo. Maybe that's in an employee manual. I think you can look at it more or less broadly, but if it's unclear and he's doing it on private property, it's not clear whether it's a duty. You should be really careful before... The broader... I don't know that you want us to decide the case based on the specific identified duties in the memo and what have you here as opposed to... I think the broader issue is for a lot of elected and appointed officials, part of their customary duties are to communicate with the public, but that would be, from your perspective, a mistake, a pretty big mistake, to define state action by reference to that customary duty because that would swallow the whole thing. That's right, Justice Kavanaugh, and I think this court has already said that in cases like Lane and Garcetti where it warned against overbroad descriptions. So even if the employee manual of the city charter here said your duty is to communicate with the public, it can't be that every time Mr. Freed does it, whether it's at church or at his own house, that is state action that the government can't control that subjects him to viewpoint limitations, which are things that are perfectly appropriate for private individuals to engage in, and we think the kind of odious examples of racial discrimination and the like should be taken care of by the employer being able to regulate private speech under the Pickering balancing test, and so you can ban your professors from saying racially discriminatory things even in their private capacity because it harms their role, but I think it should be, the court should be very careful before kind of writing the private social media policies across the board as a constitutional matter, especially with the spillover to... Ms. Hansford, do we have enough in this record to really confidently say that the Facebook page here is private property? So much turns on your argument that there is a distinction between private and public, and we can see that clearly in an actual brick-and-mortar scenario, but I didn't understand that either of the courts in this last case and this case really honed in on this issue, and so do we know that a social media account is private in this way? Justice Jackson, I think the record here is very clear on that, and I think that both of the lower courts looked at it to some extent. Probably pages 24 through 26 of the petition appendix has a lot of the key facts, but here there is no use of government time. There is no use of government resources. Mr. Fried didn't even use his official device. But what about the third-party aspect of this? We know that Facebook itself is operating in this space and doing, controlling access and that kind of thing. Does that matter to your private analysis? So that only makes it, if anything, more private that Facebook also had the authority to take down this account. We don't think that matters on these facts because Facebook didn't actually exercise that authority. The authority that was being exercised was Mr. Fried's ability to block. Thank you, counsel. This may be following up a little bit on Justice Jackson's point, but I don't mean this in any pejorative way to the analysis at all, but I was very surprised in reading the brief to see all the emphasis on private property. I mean, usually we're told in these social media whatever cases that it's not a question of a physical asset. And in what sense is this really private property? It's just the gathering of the protons or whatever they are and they pop up on his page and they could pop up on somebody else's page. So is that, I guess, should I be concerned about the fact that we have this old concept applied to what we always say is some new phenomenon and I'm not sure that it works in the sense that it's actually, it's not Blackacre, it's a machine and that somebody else's machine can pick it up if you want. It seems incongruous to me. Mr. Chief Justice, this court has often looked to private property analogies, whether the property is physical or virtual, whether it's access to a public access channel in the Halle case or the combined federal campaign in Cornelius. The question here is a denial of access and we're trying to figure out if this is an exercise of state power and you don't need any state power to block someone on Facebook. This is not a case where it's an officer wearing a uniform, flashing a badge and the blocking is somehow more effective because you're an officer. So we think the analogy is fully on point even though it's virtual, not physical. Thank you. Justice Thomas? Yes, this is probably not relevant in this case, but looming in the background is the power of Facebook itself to block these accounts. And what's curious to me is that there's that elephant in the room and we don't discuss, we decline to discuss it in the context of private property, your approach. Is there any role for consideration of the fact that Facebook could also influence who's blocked and who's not blocked? Justice Thomas, as I mentioned to Justice Jackson, at most, that's an additional reason to not find state action here, but we ultimately don't think that the fact that Facebook also could exercise control is important because this is not a case where Facebook purported to exercise that control. I believe my colleague gave this example in the first argument, but it's like if the government rents a ballroom for an official meeting and then excludes someone from that meeting, that is exercising its governmental authority as an entity that's controlling that ballroom for this period even if the hotel could say, oh, this whole meeting is too rowdy, we're going to kick everybody out. That may not be state action on the hotel's part at all and I think that Facebook's role question is a lurking one that we don't need to address here, but here, when the owner of the Facebook page or the controller of the Facebook page is the one that's doing the blocking, I think you can focus on that person's control even if it's not the full bundle of property rights, but just the ability to exclude for the temporary period until Facebook vetoes it or kicks them off entirely. Justice Alito? Justice Sonner? It just seems to me that you want a set of strong rules     you can only have authority if the state is providing resources to the people who are doing the blocking and the people who are doing the blocking and the people who are providing personnel, time for personnel, whatever, and you're saying it's only a duty if it's written, basically, and you're giving in a little bit to a strong social norm, but I don't even know what a strong social norm is because a lot of situations, especially in the workplace, can't be described that way. Let's give you an example. Christmastime, teachers are not allowed or teachers are authorized to give little gifts to kids. One teacher decides, not authorized officially, it's just a norm, okay, and one teacher decides she's not going to give it to one class of kids but to give it to another. Is that a strong social norm? And what built that strong social norm? So where do we take that from? We take that from the situation that now official government sites exist for everything and to share this information that public officials are now including in their personal accounts. So why shouldn't a government official who jumps the gun on a state announcement uses their website to be the first to announce everything, followed an hour later or a day later, but followed later by official announcements, why should that person not be viewed as using their state authority to facilitate their activities? They're getting information before everyone else, they're publishing it before everyone else. On that last question about somebody who preempts the official announcement, those are not the facts here and I think my friend misstated that. But petition appendix page 25A shows that there's nothing in the record. But your test is not taking care of that. Neither is the Sixth Circuit's test taking care of either of these two situations. But I think even in the case where you're preempting the announcement that ends up being announced somewhere else, that's also something the government official could do by telling just his friends. Government officials are allowed to talk about things that they don't want to  We don't want to assume that they're exercising state power. That takes away from the Griffith case because a private citizen can choose to make an arrest, so can a deputy choose to make an arrest. What changed it in Griffith was the fact that he was wearing the deputy badge and purporting to act as a government official. Similarly here, he's disclosing information that's private to his job and using this site to make people realize or believe that he is performing a social function by being the first to give them the news. Justice Sotomayor, when you're conducting an arrest or an arrest, the fact that you're exercising governmental authority and appearing to be exercising governmental authority changes the nature of what you're doing. It's giving you additional power that a private rent-a-cop does not have to obtain compliance. So we think the analogy to the Griffith case would be if Mr. Freed went on Facebook and said I'm hereby ordered everybody to stay at home under penalty of fines and then the fact that he appeared official and that might matter but that is not any of the facts here and that is not the power that is being exercised by blocking someone. Just talking about things as your Honor's opinion makes clear, talking about your job is not something that the state has a monopoly on and that government employees can only do in the official capacity. That's what makes these cases hard. That's why we need to figure out if the official is speaking as a private citizen or not. If it's happening on private property and private time you should be careful without a more specific duty to infer that. Just one last point, the duty doesn't need to be spelled out in detail. The teacher's job in the classroom is to teach and mentor her students and if she is doing those things in the classroom I don't think it's going to make a difference. I think that's also probably true. If the duty is to provide information in emergency situations the fact that it doesn't say provide information doesn't matter. It's still part of the duty. If it's speaking about the pandemic before you take that away you want to be really sure it's part of his job by looking at something more specific and we don't have that here. Thank you, everyone.  to pass it over to Justice Kagan. I take this as another version of the question about the apparent archaic nature of your test. I guess what strikes me about it is it's hard to predict the future. Change has happened very quickly in the last however many years and is going to continue to happen. And part of that change is that more and more of our government operates on social media, more and more of our democracy operates on social media, public discourse, this is the forum for officials to talk to citizens, for citizens to talk to officials, for citizens to talk to each other, and it is becoming increasingly so. And I worry that the rules that you're suggesting and even the analogies that you're proposing as though we can satisfy as we can solve this case by thinking about grocery stores is really not taking into account the big picture of how much is going to be happening in this forum and how much citizens will be foreclosed from participating in our democracy if the kind of rule you're advocating goes into effect. So I guess I would like you to comment on that. You know, it's a big picture challenge about the nature of the world we live in and we're going to live in. And the need for rules that are going to meet a world that we don't really have any idea what it will look like. Justice Kagan, I agree that social media is important and is increasing in importance, but I think our test is malleable enough to capture that because I think that when   increasing in importance, and as the duties change, then I think that will become state action. Our submission is that in a case where running the Facebook account is extra, or in this case when somebody is running a personal Facebook account and he happens to talk about topics that matter to his employer as well as to his community and to him personally, that's not enough. And I think one way to see that this is an extra bucket as opposed to a duty bucket is that Mr. Freed was able to take down his Facebook page when he was upset at being subject to these private capacity suits. He was able to take it down. That's just less speech. If the mayor said no, we need you to have a Facebook presence, he wouldn't have been allowed to do that, but then he would have been running the Facebook page in his official capacity. It would have been a duty because it would have been something he was instructed to do by the mayor. I'm trying to understand how we evaluate a government employee controlling access to private property. You keep focusing on the private property nature of this, but what if we have a public concert in a private area, a park or something, and the police recognize there are going to be large crowds, so they come and they help with the screening of the bags and they kick out people who are rowdy and they're controlling access to this area of the private area of this. Because it's private, we would say that's not state action? I don't think so, Justice Jackson. I think those officers would be carrying out their official duties and exercising their power. It's a police officer case where the authority of the state makes the expulsion more effective. But Taylor could have done that. It's not just we look at what are they doing versus what a private person could do. So what makes it that they are state action and not? I think that state officials can exclude people from private property, and that is the case that if state officials are carrying out their duty to do it, if they were hired to do it, that would be state action if they were hired as police officers to exercise that power and to make that expulsion more effective. But there's no analogy to that on Facebook because anyone can block equally. If we had a world where Facebook didn't have a blocking function, that would be an instance of apparent authority, but we don't think that plays into the set of cases, which is why we think you can set it aside and just focus on governmental control. Thank you. Thank you, counsel. Thank you, your Honor. I would like to start by addressing the test proposed by the United States. I think it has a number of problems, but I'd like to focus on two of them. First of all, the test is all about denial of access to property, but many disputes on social media have nothing to do with access. They have to do with discrimination or other forms of constitutional harm. We gave the example of a teaching assistant at a public university who made a number of anti-Semitic comments about students in her class. It has nothing to do with access, but it doesn't make sense to have one state action test for private property. The United States is an obvious doctrinal mismatch because it relies on cases about the use of private property, which, because it's private property, it has some government involvement, but it has to be extraordinary to overcome the exclusion   property. The United States court is well aware that very few things qualify as exclusive public functions. For that reason, under the government's test, public officials could transfer a lot of what they do to private property. I would like to point out that on our side, we're talking about creation of a channel of communication between a public official and their constituents about how they're doing their job. We're not talking about one-off posts or fortuitous encounters. Instead, we're talking about denial of access to the channel altogether. There are four general values. First of all, we've talked a lot about losing out on access to information. Some information is only going to be available on the private Facebook page of public officials. Sometimes it will only be available at a certain time or in a certain form. Sometimes it will be available somewhere else but it will be scattered to the four corners of the Internet. Second, you lose access to the public official him or herself. There were a number of instances where Mr. Freed would explain a directive that he himself had issued to say it applies not just to people who are about to have their water cut off but also to people who have already had their water cut off. That is something you would only know if you were able to interact with him and ask him a question online. Third, this is also a place where members of the town came to talk to one another. That is part of the    The public school system has a dignitary interest. We are not just talking about someone doing this, blocking information. It also matters that it is the government who is doing it to you. We have an example in our brief about a public school. We think that would be an obvious constitutional problem. It is not a problem because of any sort of coercion. It is not a problem because of use of state resources. It is not about denial of access to pizza and ice cream. It is a dignitary harm. It is someone from the government treating you in a particular way that you should not be treated. That is something that gets lost when you don't take account of the fact that he was holding himself out as the city manager establishing this channel talking to citizens in that capacity. There are also first amendment values on the other side of the equation. We think they are somewhat limited when we are  the channel that you have established. I think to a large extent the other side undercuts their own first amendment argument when they establish a second Facebook account. To some extent they are already undercutting their own first amendment rights. We do admit that if you establish a channel as a public official purporting to be a public official, you lose some amount of control and you will be subject to first amendment scrutiny. A lot of times you can still block people for various reasons but we think criticism is traditionally the price we have been willing to pay for self government. Thank you. Thank you counsel. The case is submitted.